Good morning, Your Honors. Welcome to California, Judge Sentelle. Thank you. May it please the Court, Osram Mehdi, on behalf of Appellants. I'd like to reserve two minutes for rebuttal, please. Watch your time. I will, thank you. This appeal arises from the 12 v. 6 dismissal of a consumer class action asserting claims under California's unfair competition law, false advertising law, and Consumer Legal Remedies Act. I'd like to address five major areas where I believe that the lower court erred in its dismissal. First, Your Honor, the dismissal based on failure to meet Rules 9b and 8a. The complaint allegations are detailed and plausible. They identify the specific false misrepresentations and material omissions on Monster's labeling, as well as Monster's overarching advertising and marketing scheme with particularity. The complaint details the who, what, when, where, and how. It articulates each plaintiff's reasonable reliance on either misrepresentations or omissions in purchasing Monster Energy drinks at a premium. First, with respect to the hydration claims, that includes the statements, hydrates like a sports drink, brings you back. Do we know from this record what the premium was? Your Honor, it changes. I don't know exactly what the premium was. There is a premium, however. We don't either. From this record, I don't think we can know, can we? But is that a requirement, Your Honor, to know the premium? Go ahead with your argument. I just was curious. I know you said, as you opened up, at a premium. And I've read it more than once in your report. And I wonder, why don't they tell us what the premium is? Well, Your Honor, if that's the case, if that is the defect, then that is an issue for leave to amend. Well, it may not be a defect, as you said. It may not matter. But it could be a matter of curiosity when somebody emphasizes bought at a premium. Do you understand? I understand your question completely, Your Honor. It could not matter at all. I would add to that, if it doesn't matter, why do you have it repeatedly in that complaint? Well, let's take the hydrates like a sports drink. So sports drinks are sold at a certain price. Monster Energy is sold at a higher price than sports drinks. I will submit that. Is that all you mean by at a premium? Is it cost more than some other things? No. There are no similar things. If you're looking at other energy drinks, but we're not comparing them to other energy drinks, Your Honor. And what does at a premium mean? It means that you pay more than you would have paid had you known all the information that you needed to know in purchasing those drinks. Or you may not have purchased them at all, Your Honor. That may well be. But I'm like Judge Ferris. The at a premium, I saw it over and over in the complaint, and I never figured out what it had to do with anything. Well, Your Honor, again, if that's the case, then that's an issue that we can correct on amendment. On the, if you will, the Kvamli-Iqbal problem, what appellate case from our circuit can you guide us to that we can rely upon in terms of the sufficiency of the pleading in this case? I see the Opperman case, but that's a district court case. Well, that's, you're talking about the long-term advertising campaign? Correct. Okay. I am relying largely on tobacco too. The reason that we used Opperman versus Papp is because... The tobacco too is a state court case, right? It's a state court, California Supreme Court case, Your Honor. But the reason that I used Opperman versus Papp is because of the way that Judge Tiger distilled the factors and made it clear. And I'd like to get to the long-term advertising. There is no Ninth Circuit case that you're relying upon for your position, right? On this point? I am relying on Williams versus Gerber for the position that, for the long-term advertising campaign, no, Your Honor. There is no Ninth Circuit case on point. Yes. Okay. But getting back to the statements, the hydrates like a sports drink, the fact is that that statement is false because caffeine does not hydrate. Sports drinks don't contain 200 milligrams or more of caffeine and they don't warrant to consume responsibly or limit consumption. The words rehydrate in all uppercase bold further reinforce this misrepresentation and then placement next to sports drinks, soft drinks, and juices misleads reasonable consumers. The science, as we allegedly complain— So are you including product placement as part of your Twombly proof complaint? Not proof. And I'm not required to provide proof. I'm just saying that the placement— Well, you're required to answer the question that Judge Smith put to you. And again, in reading your papers, I'm not at all certain that a manufacturer can be sued for where the merchant has the product. I'm sorry, Your Honor. Can be sued for what? Where the merchant places the product. Oh, no, not at all. This is—it all has to be viewed in context, Your Honor. I understand that. But in any context, I'm not sure how it can be part of their liability that their product is placed next to sports drinks and soft drinks. They don't control the merchant's space, do they? Yes, they do, in fact. They do? Very often they do. I have other cases where— I've had several cases involving various products, and none of them said that the manufacturer could control. And in fact, there have been some cases where that's been one of the wrongdoings alleged is that they tried to force product placement. Quickly, Your Honor. I was—I worked on a different case. It was a condom case. And condom manufacturers can actually tell— Yes. That's the one I was thinking of. Oh, really? Well, but in that case, it was a competitor against another competitor. Yeah. And it had to do with product placement, but it was a matter of market power. And I don't see that you've alleged that anything relevant about market power here. Your Honor, that's one aspect of a larger, more detailed complaint. Anyway, as I mentioned, hydrates like a sports drink is just a false statement. The elevated levels of caffeine in sports drinks, they act as a diuretic. They dehydrate. The science contradicts Monster's hydration claim. Now, here, the district court chose to disbelieve Plaintiff Townsend's allegations that he had read and relied on that statement because the explanation of falsity was not in the party paragraph. And, Your Honors, that's elevating form over substance because it was in the complaint. It was in paragraphs 36 to 40 at ER 89 to 91. Does that go to the standing issue? No, the standing—Townsend was—the court found had standing. No, I'm not talking about that. I'm talking about you said that the district court chose not to believe that your plaintiff saw these things. That goes to the standing, right? It does not. For Townsend, the court found that Townsend had standing. However, she found it implausible that he could have read and as, you know, a reasonable consumer would think that it actually hydrates like a sports drink. Now, in fact, Monster has changed that since the complaint was filed to instead of hydrates like a sports drink, it now says fires you up. And instead of saying brings you back, it now says it's the perfect choice. So the district court speculated that the label change could have been motivated by the company changing its advertising campaign or focus. But the record doesn't support that speculation. And at the pleading stage, Your Honors, plaintiffs' allegations have to be accepted as true and viewed in the light most favorable to plaintiffs. And in fact, this court recently held in McMahon v. Take Two that a district court should not make findings that representations are or are not misleading by failing to view them in the light most favorable. So from your perspective, insofar as the complaint itself is concerned, you have alleged all you need to, not to say what might happen at a later point, what might happen with a summary judgment and certainly with a trial. But at this point, you're saying the district judge simply has no basis for making a determination whether the client actually saw these things or not. Is that right? Absolutely, Your Honor. I'd like to address quickly the second set of statements, which is the ideal combo of the right ingredients in the right proportion, which the complaint alleges must be viewed together with consume responsibly limit to three per day and not recommended for children, pregnant women, or people sensitive to caffeine. The district court found that we had abandoned the consume responsibly statement. We had not. It's in the brief. It's also in the complaint. It's everywhere in the complaint at ER 78, ER 91 to 92, ER 106, 111, 112. Consume responsibly limit to three cans daily. That warning is false and materially omits material information. What's the falsity of that? Are you saying that you should go ahead and drink more than three daily? No, Your Honor. I'm saying that even if you drink three cans a day, that is too much caffeine based even for an adult. But for a teenager, the teenagers that that monster so aggressively targets, that it admittedly targets, 100 milligrams exposes them to high risk of high blood pressure, heart palpitations, severe cardiac events. Aren't they less likely to get that if they limit it to three cans a day rather than more likely? Your Honor, they're likely to get that if they drink one can a day. But we're on the three can statement. Right. And you're saying it's a false statement. Yes. And I'm trying to explore the falsity of it. You seem to be saying that they should limit or not drink it at all. So how is that a false statement that induces them? What I'm saying is they should delete the reference to three cans, which incidentally, since this appeals to three cans a day. So they should say on their can, don't drink our product at all? Is that what you're saying? No, it says consume responsibly, Your Honor. And then it says drink three cans. No, it says limit to three cans. Limit to three cans. And that is 500 milligrams of caffeine. According to every documented scientific study, that is too much caffeine on a daily basis, Your Honor. You may choose to drink as many as you want, but the fact is the manufacturer has an affirmative duty  I know we're using your time, but if we're talking about duty of disclosure, is that preempted? No, it's not preempted at all. In fact, I have to thank counsel for submitting the Ebner case, which affirms Astiana v. Hain. In Astiana v. Hain, the Ninth Circuit actually held that the FDCA does not preempt state law causes of action for consumer remedies arising out of false and misleading labels. Well, be careful what you're saying on that. My understanding is that there's no preemption of safety warnings, but in terms of any requirement that you specify the amount of caffeine and so on, that is preempted, isn't it? But our complaint is not talking about content. I get that, but based on your argument, it sounded for a minute, though, like you were Not at all. All I'm saying is that the safety warnings are exempted expressly under Section C. The safety warnings? Yes, the safety warnings are, and as well as the false statements specifically, are also preempted. But the statement that led to this exchange by you was that they had a duty to disclose. That's not a direct quote, but isn't disclosure what is preempted? Disclosure of the safety warnings, of warnings? The requirement of disclosure, is that not preempted? You're talking about caffeine, you're talking about a content disclosure, right? I'm not talking about content disclosure, I'm talking about When did you quit? We were talking about how much caffeine is in it. You said that it wasn't good to put this warning that said limit yourself to three drinks. You said instead they needed to disclose that the caffeine was there and could be harmful. The caffeine could be harmful. That is not saying that You were saying they had a disclosure requirement, or obligation. Wilson v. Hewlett-Packard makes that a requirement when a manufacturer knows of risks and has risks of physical injury or safety issues, Your Honor. Do you want to save any of your rebuttal time? I want to save my time, yes. Go ahead. We'll look forward to chatting with you again shortly. Let's hear from, I want to say let's hear from the monster, but that would be bad. Because I'm sure you're a really nice guy, right? If we hadn't, if he hadn't, if he hadn't mentioned it, I was wondering the exuberance with which a certain party made an argument made me think she may have had a sip of monster drink before she came to argue. Fired up, ready to go. There we go. May it please the Court, I'm Dan Marmolevsky. With me is my partner, Porvi Patel. I think the Court should focus on the specific allegations from these three plaintiffs as to their connection with the drinks and the statements that give rise to their claims here. Are you talking on the standing issue or on the specificity of the falsity allegations? It's on standing. It's whether or not they were deceived. It's whether or not they suffered any injury. So starting with Mr. Fisher and to be specific, the allegations begin in paragraph 23 of the second amended complaint. It's in the excerpts of record at page 82. So Mr. Fisher says that he was given a sample of a monster energy drink. Doesn't say that he read anything on the label, that he relied on anything on the label. So he hasn't alleged any concrete or actual injury. All he said is he got a can and he consumed it and he continued to purchase it. Is an omission enough in this case or must it be an affirmative statement? Well, what the plaintiffs argued is they said that there were three on-label representations and they pointed to the ideal combo statement. It's the ideal combo of the right ingredients and the right proportion to deliver the big bad buzz that only monster can. And they pointed to two statements on the monster rehab product. Number one, quenches thirst, hydrates like a sports drink and brings you back after a hard day's night. And lastly, refresh, rehydrate, revive or restore. Now Mr. Fisher doesn't make any of those claims. They also argued that monster should be liable because of what they labeled off-label, off-label claims which relate to various marketing or advertising initiatives. And again, Mr. Fisher doesn't allege any exposure to any of that. All he said is I bought a product and nobody told me that it isn't safe. That's essentially his claim and that is not enough for Article III standing. With respect to Mr. Townsend, Mr. Townsend makes claims with regard to the rehab product and he says in paragraph 24 at excerpt of record 83 that he decided to buy the product because it indicated that the drink had 100% of the daily values of various vitamins as well as supplements. It has those vitamins. It has those supplements. There's no deception there. He does say that he read and relied on the affirmative representation that the drink quenches thirst, hydrates like a sports drink and brings you back. But he doesn't say that when he consumed it, it didn't quench his thirst. He doesn't say it didn't hydrate. It didn't hydrate like a sports drink. He doesn't say it didn't hydrate. He doesn't say what he understood that to mean. We have to look at that allegation in context. And can you tell us that this, in fact, is true, that it hydrates like a sports drink? Based on the record we have before us, can you make that claim? What is a sports drink, first of all? Gatorade. Well, Gatorade. The term sports drink has a commonly accepted usage. You sound like a politician on that word now. I'm sure you know what a sports drink is. I have an understanding in my mind of what is a sports drink. But let's take Gatorade. Gatorade has three different sports drinks. They used to have just one. Let's take my question. Can you defend the proposition that Monster Rehab or Monster Beverage hydrates like a sports drink? It hydrates like Gatorade's Gatorade Performance 2, which is its hydration drink. Absolutely. Because it contains electrolytes that replenish fluids. And we put in the record before the court, and it's in the supplemental excerpts of record at pages 12 and 13. We have a copy of a Monster Rehab label. And we have a copy of the ingredient information for Gatorade 2. And you will see that there are electrolytes in both of them. In fact, there are more electrolytes in the Monster Rehab product than in the Gatorade 2 product. So it is a true statement if you understand sports drink to mean a hydration product. There are sports drinks that don't have electrolytes. There are ones that are intended to help you perform. There are ones that are intended to help you recover after athletic. You can move along. You've got my question. You can move along. But again, with respect to that statement, Mr. Townsend doesn't allege any deception. And he has three economic injury fraud-based claims under California Consumer Protection Statutes. And he hasn't alleged any fraud. And for that reason and the multiple other reasons that Judge Phillips found, his claims were insufficient. And then you turn to Mr. Cross, the third plaintiff. And he's referred to in paragraph 25 beginning at page 84 through 85. And he relies on this ideal combo statement. The right ingredients in the right proportion to deliver the big bad buzz. And what they allege in the complaint is he thought that that meant that Monster Energy drinks were safe. And what Judge Phillips said is that that is not the type of reading that a reasonable consumer would give to those words. Those words are not objective, clearly defined meanings. They are puffery. And it is an implausible interpretation to take those words and construe them to be a representation of safety. So those are the on-label representations that they made. Let me ask you this, counsel. We have an unpublished case, Galope, that deals with how we construe omissions in connection with false advertising. Besides the fact it's not published, are you familiar with that case, first of all? It's one of 300 cases. I'm just asking whether you're familiar with that one. Give me a second. I can find what I said. I can give you the site if you want. It's 566 Fed. Galope dealt with manipulation of Libor. And dealt with an omission to state something. Does that have any relevance in this case? It's reasoning. Admittedly, it's not a binding thing. Does it have any value in this case? Well, the omission claim here is a failure to disclose that the product was not safe. And there are multiple problems with that theory. First of all, there is no duty of disclosure. There's no fiduciary obligation. Secondly, there's no suggestion that the company is concealing information that it has superior access to. Caffeine is one of the most widely studied and written about subjects. The entire subject of energy drinks and the levels of caffeine and whether too much caffeine is unsafe for different groups is something that is in the public domain. It's obviously been the subject of congressional attention. It's been the subject of attention from FDA. FDA has held hearings. So there is nothing that is concealed here. And in addition, when Monster Energy marketed its products as dietary supplements, it was required by the Federal Food, Drug, and Cosmetic Act to file what are called adverse event reports. And so if somebody called up the customer relations department and said, I just had one of these drinks and I had to go to the emergency room, Monster is required to and files adverse events reports. And in fact, adverse event reports are attached as an exhibit to some of the pleadings by plaintiffs. So there is no concealment here. But again, I don't think that there is any duty of disclosure. So bottom line, from your perspective, with respect to these three plaintiffs, none of them has alleged that anything they saw or occurred to them is in any way tied to false statements that were allegedly made by Monster. Is that right? That's correct. Okay. Why don't you tell us what, in your view, the bottom line of the decision would be. I assume you want the final word to be affirmed. For what reason? Well, I think there are five or six different reasons why it should be affirmed. Well, give me five. Okay. So with respect to Mr. Fisher, he doesn't even have Article III standing. With respect to the other two plaintiffs, Mr. Townsend and Mr. Cross, they have an alleged fraud with particularity. They have an alleged that they relied to their detriment on claimed misrepresentations. They have an alleged that they had any exposure to the so-called off-label representations. I would agree that not stating the amount of caffeine on the label is preempted. I think, lastly, that Judge Phillips was correct in finding that even if they overcame all of those hurdles, that it would be appropriate to exercise or defer to the primary jurisdiction of FDA, given that FDA has been conducting an investigation concerning the safety of caffeine added to various... And I gather from this record it's ongoing. Is it ongoing? Has it been completed? It has not been completed. It is ongoing. There were public hearings, and there continues to be speeches by members of FDA talking about it. If you go on the FDA website and look at the public meeting for various... public calendars for various officials, it shows, for example, the director of the Center for Food Safety and Applied Nutrition had a caffeine systematic review meeting in February. She had one in November. There was a statement by FDA on caffeine added to peanut butter in December. Don't let us take you away from the point you were making. You were giving us the reasons that... Right. For all of those reasons, what Judge Phillips did is she dismissed without prejudice because of primary jurisdiction, but I believe that the court can affirm and dismiss with prejudice on all of the other grounds. Basically, a claim for relief has not been stated and doesn't even need to reach the issue of primary jurisdiction. Do you agree, counsel, that while any requirement to disclose the amount of caffeine is preempted, that the law expressly exempts state-based warnings that don't deal with the content? If there is a state warning that requires a specific warning and that warning is identical with a warning that, for example, is set forth in the Nutrition Labeling and Enforcement Act, then it is not preempted. Let's say it's not identical. Let's just say that California, in its wisdom, said, you know, the state legislature just thinks that these energy drinks are dangerous. Could they do that? No. Well, first of all, again, we don't have a California statute here. I understand. I'm just trying to understand the parameters of the preemption here. Sure. For a food manufacturer to introduce a product into the market, it has to first conclude that the ingredients in that product are generally recognized as safe. And there are various ways that an ingredient can qualify as generally recognized as safe. It could be in the food supply before 1958. You can do a GRAS notification and have the ingredient and have FDA affirm that it is safe. There are individual products or individual ingredients that the FDA may already have said are safe. Or a manufacturer can self-affirm. And if a manufacturer self-affirms, and that is the most typical method for determining the safety of ingredients, then FDA and only FDA can challenge that. FDA can issue a warning letter. They can issue a recall letter. They can commence an injunctive proceeding. But a private plaintiff can't. A public plaintiff can't. You can't have someone in... Well, you're talking about a plaintiff. We're talking about preemption here. So my reading of it is that safety warnings, as long as they don't require disclosure of content or the items that are clearly preempted, are not. Indeed, they are specifically excluded from the relevant portion of the statute here. Is that wrong? If a state has enacted a provision requiring a specific warning and it's not... A content-specific, yeah. Okay. But again, what I'm saying here is that there is a safe harbor. What FDA has said is if you, on your own, affirm that the ingredients are GRAS, FDA can challenge it, but nobody else can challenge it. And there's preemption for that reason. That's not what happened here, though. The GRAS is not... The GRAS is not really at issue in this case. It's at issue in the next case. Unless the Court has any other questions. Thank you, Counsel. Let's hear from our caffeine-charged Counsel here. Did you have a monster drink this morning, Counsel? Pardon me. I'm very passionate about this, and I apologize if that... No, you didn't. You're just representing your client. We aren't criticizing you. So, I want to address a few things quickly. Fisher. Fisher absolutely was exposed to the long-term marketing campaign. Monster targets teenagers. They admit that. And Fisher was 16 when he was first given his free can of Monster outside his high school. You want us to decide it on the record, though. And what this record shows... That he was given a sample, and he then alleges that he purchased it in the future. No, Your Honor. Isn't that it? He purchased it in the future, but he looked at the can. He's a smart kid. He looked at the can. He saw there was nothing there that indicated it was bad for him. You know, all kids nowadays read can labels. And he decided to drink it, and then he continued to drink it because a lot of kids don't like the taste of coffee. Is there something in the record that says that all kids today read can labels? I missed that. I was saying that. I missed that. My 9-year-old reads can labels. So, quickly, a couple other things. We could probably put a civics lesson on there just as O'Connor would be pleased. Quickly, Your Honor. I don't want to take... So, on preemption, I wanted to point out that the state absolutely... The warnings that don't have content are preempted. That is under the Savings Clause. Warnings, so long as they're identical to the FDCA, are also permitted under applicable FDCA as well as California Sherman Act. With respect, a very important point I want to make... We're almost out of time here. I'm sorry? We're out of time. Oh. Sorry about that. That's okay. We applaud your enthusiastic representation on the part of both counsels. Thank you very much for the argument. The case just argued is submitted.
judges: Sentelle, Farris, M. Smith